UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTOINETTE CECILIA LEPLEY,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. C13-0495-JCC-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Antoinette Cecilia Lepley proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1958.[1] She graduated from high school and previously

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

worked as a general office clerk, receptionist, appointment clerk, and fast food worker. (AR 29.)

Plaintiff filed an application for DIB and protectively for SSI on October 15, 2010, alleging disability beginning September 17, 2010. (AR 171-73.) She is insured for DI benefits through December 31, 2015. (AR 19.) Plaintiff's application was denied at the initial level and on reconsideration. Plaintiff timely requested a hearing.

On January 6, 2012, ALJ Kimberly Boyce held a hearing, taking testimony from plaintiff and a vocational expert. (AR 37-85.) On February 8, 2012, the ALJ issued a decision finding plaintiff not disabled. (AR 17-31.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on January 17, 2013 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's elbow arthralgia, intestinal hyperalgesia, Crohn's ileitis, affective disorder, and social anxiety

---

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except the claimant can stand and/or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday with normal breaks and with close proximity to a bathroom. The claimant retains the ability to perform routine work that requires one-to-three step instructions, and to sustain concentration for two-hour periods of time. Further, the claimant can work in proximity to coworkers, but not in a team or cooperative effort. Contact with the general public, while not prohibited, should be occasional and superficial. The claimant requires an additional ten minute break over and above the normal number of breaks two or three times per week.

With that assessment, the ALJ found plaintiff unable to perform her past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as an electrical accessories assembler, small products assembler, and riveting machine operator.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erroneously evaluated the medical opinion evidence, failed to correctly assess her RFC, and erred in assessing her credibility. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Credibility Assessment</u>

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Comm'r of Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff alleges daily attacks of Crohn's disease with "horrendous" pain starting in the upper abdomen and working down through the legs, causing severe headache and ear pain.

(AR 55, 59.)  She testified her bipolar disorder and anxiety make her afraid of going back to work.  (AR 62.)  At the time of the hearing, plaintiff testified fatigue was making her incapable of leaving the house to even take a walk.  (*Id.*)  She alleged difficulty with memory, completing tasks, concentration, and getting along with others, including chronic anger and depression.  (AR 22, 492.)

The ALJ gave two reasons for discounting the credibility of plaintiff's subjective symptom testimony – the inconsistency of her physical and mental symptoms with the medical evidence, and her ability to engage in activities showing greater physical and mental functioning ability alleged.  Plaintiff argues none of these reasons were clear and convincing.  She argues the fact her condition is not controlled by medication is supportive of disability, not a contraindication.  She argues her subjective symptoms should be credited, whether or not they are attributed to Crohn's disease, irritable bowel syndrome, or some other cause.  She argues the treatment she has received has not been limited to conservative measures, but rather "symptomatic management," and she may eventually be a surgery candidate.  She disputes the significance of the ALJ's finding she is motivated to keep her diagnosis of Crohn's disease, noting her providers continue to hold that diagnosis whether or not they attribute her abdominal attacks to that condition.  The Commissioner argues that, at the most, plaintiff posits an alternative interpretation of the evidence, but fails to show the interpretation adopted by the ALJ is unreasonable.

A.   <u>Lack of Support in the Medical Evidence</u>

While a lack of medical evidence alone cannot form the basis of an adverse credibility finding as to pain testimony, "medical evidence is still a relevant factor in determining the

severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001). The ALJ here cited a number of specific ways in which the medical evidence did not substantiate plaintiff's physical and mental symptoms to the extent alleged. For example, although plaintiff asserted that "seven colonoscopies in the last five years" have shown Crohn's disease (AR 61), the medical records do not support this assertion. Dr. Rulyak, a gastroenterologist at The Everett Clinic, noted in May 2011 that plaintiff's endoscopic findings were "relatively mild" and did not think most of her symptoms could be attributed to Crohn's disease. (AR 599.) Plaintiff felt her methotrexate was causing Crohn's attacks of abdominal and joint pain, but Dr. Rulyak found "no biological reason" for this reaction and described these symptoms as atypical for a Crohn's flare. (*Id.*)

Nevertheless, when plaintiff started care with a new primary care physician, Dr. David Dickey, on June 1, 2011, she told the doctor "[s]he thinks her abdominal pain is Crohn's because of the location in the right lower quadrant." (AR 841.) Although plaintiff described chronic fatigue and sleeping "all the time . . . since around [the time] she was diagnosed with Crohn's," Dr. Dickey noted the labwork did not uncover a reason for the fatigue. (AR 841-42.) He noted plaintiff's mood and affect were normal, she appeared pleasant and cooperative, and her physical exam was generally unremarkable. (AR 25, 845.)

A few days later, on June 8, 2011, plaintiff presented to the emergency department at Swedish Medical Center in Edmonds with "unbearable" abdominal pain. (AR 680.) However, an abdominal CT scan showed severe constipation but no evidence of any acute Crohn's disease "or any other abnormalities." (AR 672.) After the bowel evacuated, the abdominal pain was gone. (AR 680.)

Plaintiff next presented to the emergency department at Mill Creek on August 25, 2011, complaining of constipation for five-to-six days. Her physical examination was unremarkable and the abdominal x-ray showed moderate stool consistent with constipation. (AR 880.) The emergency room doctor did not find any additional testing necessary. After an enema was administered, plaintiff was discharged. (AR 881.)

After administering a colonoscopy on November 22, 2011, gastroenterologist James Lord M.D. noted plaintiff's symptoms were "out of proportion to findings, as the patient's inflammatory markers and radiographic studies have been bland." (AR 863-64.) The impression was numerous punched-out shallow ulcers through the ileum, with a completely normal colon. (*Id*.) Dr. Lord wrote that plaintiff's bowels "are very sensitive to pain", which does not cause the constipation but "makes her extra miserable when she gets constipated." (AR 885.) Dr. Lord noted that her Crohn's disease caused small bowel inflammation, but not in the colon. Since her pain "clinically appears to be colonic" and was responsive to treatment for constipation, he felt this was the reason for most of her pain. (*Id.*)

Plaintiff reported to her providers at The Everett Clinic she experienced pain so severe she blacked out while lying in bed (AR 763, 772), but her physical exam and labs were all normal. Plaintiff's doctor felt the symptoms were unlikely due to uncontrolled Crohn's (AR 771), although plaintiff was convinced otherwise "and becomes quite upset at the suggestion that this could be anything else." (AR 592.)

After considering the medical evidence, the ALJ concluded it failed to substantiate plaintiff's physical symptoms and limitations to the degree alleged. Rather, the record showed a "lack of sustained treatment due to the claimant being refractory to treatment, the claimant

appearing motivated to keep her diagnosis of Crohn's despite her symptoms being considered out of proportion to objective findings, what little treatment received being limited to conservative measures, and generally unremarkable physical exams." (AR 26.)

The ALJ also found a lack of support in the medical record for plaintiff's mental symptoms and limitations to the degree alleged, noting evidence of increased stability with medication (AR 368), overall improvement (AR 431, 432, 433, 436, 438-39, 441, 444-45, 447), plaintiff's report that she "feels like she is back to self" (AR 573), and that her "mood is better" (AR 657). The ALJ concluded the medical record showed generally mild clinical findings, stabilization and some improvement when plaintiff was compliant with treatment. (AR 27.)

While plaintiff may posit a reasonable alternative interpretation of this evidence, she fails to show the ALJ's interpretation was irrational. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). The ALJ acknowledged plaintiff did suffer from gastrointestinal symptoms, as well as some mental health symptoms, but reasonably found evidence of generally unremarkable clinical findings and overall improvement and stability as contradictory of plaintiff's contentions these conditions made it impossible for her to work.

B.    <u>Inconsistency of Allegations with Ability to Engage in Activities</u>

The ALJ found plaintiff engaged in activities that suggest "greater ability for prolonged sitting, ability to socialize, perform activities of daily living, and sustain concentration, persistence, and pace than alleged." (AR 27.) As evidence of this greater physical and mental capacity, the ALJ cited plaintiff's ability to maintain personal care including daily bathing (AR

493), to do some laundry, use the computer, read, manage her bills, and go outside in her yard and converse with her neighbor. The ALJ noted plaintiff stated she generally "'sits on the couch'" during the day. Although plaintiff testified she had no friends, she also testified a friend helped administer her methotrexate injections. (AR 755). Plaintiff spends time at the computer researching her medical condition, sending emails, and updates her Facebook profile on a daily basis. The ALJ noted that, despite her alleged social phobia with anxiety attacks, plaintiff was able to seek medical help at the emergency room without observed mental distress and was described by various examiners as polite and cooperative. Plaintiff was able to remember and apply the provisions of the Family Medical Leave Act to her last job. (*Id.*)

The Court finds reasonable the ALJ's conclusion that that these activities showed a greater degree of functioning than plaintiff presented in her testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a credibility determination based on, among other things, a tendency to exaggerate, was supported by substantial evidence). *See also* Social Security Ruling SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.") The Court does not find the ALJ erred in the assessment of plaintiff's subjective testimony about her symptoms and limitations.

Medical Opinion Evidence

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected

only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

A. Stephen Rulyak, M.D.

Dr. Rulyak, a gastroenterologist at The Everett Clinic, examined plaintiff on January 19, April 13, and May 18, 2011 (AR 548-52, 586-99) at the referral of Dr. Michael Kimmey, plaintiff's treating doctor at the Tacoma Digestive Disease Center. After this series of examinations, Dr. Rulyak's assessment was that plaintiff has "[c]hronic abdominal pain in setting of probable ileal Crohn's disease and also history of irritable bowel syndrome." (AR 599.) Dr. Rulyak found plaintiff's reactions to the medications prescribed for Crohn's disease to be "very unusual and I can't think of a biological explanation for them." (*Id.*) Dr. Rulyak attributed most of plaintiff's symptoms to irritable bowel syndrome rather than Crohn's disease and felt she was disabled "for a multitude of reasons" including her gastrointestinal symptoms but not specifying the other reasons. (*Id.*)

At plaintiff's request, Dr. Rulyak completed a Physical RFC (PRFC) Questionnaire

(AR 548-52.) In the questionnaire, Dr. Rulyak indicated plaintiff had severe abdominal pain and had not improved with any treatment, opining the symptoms would "frequently" interfere with the attention and concentration needed to perform even simple work tasks, and that plaintiff was incapable of even "low stress" jobs. (AR 549.) He specified plaintiff would "frequently" need to take unscheduled thirty minute breaks during an eight-hour working day. (AR 550.) Dr. Rulyak indicated he was unable to answer most of the questions regarding specific physical capacities, and concluded the questionnaire by stating plaintiff's abdominal pain "makes her unable to work and she has failed all treatment to date." (AR 552.)

The ALJ gave "little weight" to Dr. Rulyak's opinion regarding plaintiff's ability to work. As the Commissioner points out, this determination was applied specifically to the questionnaire filled out by Dr. Rulyak, as the ALJ elsewhere cited and relied on Dr. Rulyak's other observations and assessment as set forth in his examination records. The ALJ found Dr. Rulyak's questionnaire responses to be "inconsistent with the totality of the evidence in the record, including lack of sustained treatment due to the claimant being refractory to treatment, the claimant appearing motivated to keep her diagnosis of Crohn's despite her symptoms being considered out of proportion to objective findings, what little treatment received being limited to conservative measures, generally unremarkable physical exams and demonstrated ability to engage in activities showing greater functioning ability." (AR 28.) The ALJ also cited records generated by Dr. James Lord showing plaintiff's pain responded to treatment for constipation. (*Id*.)

Plaintiff concedes the ALJ was not obligated to accept Dr. Rulyak's opinion she is

disabled,[2] but disputes the ALJ's disregard of her need for frequent unscheduled thirty minute breaks during an eight-hour work day, and her inability to handle even a low stress job. Plaintiff questions the ALJ's finding she is refractory to treatment, arguing this supports, rather than undermines her disability claim. Plaintiff also contends the ALJ erred by failing to acknowledge Dr. Rulyak's status as a specialist and treating doctor, or the consistency of his opinions with the other treating gastroenterologist, Dr. Kimmey. Plaintiff questions the conclusion that Dr. Lord's opinions undermine those of Dr. Rulyak.

However, the Court finds the ALJ's assessment of Dr. Rulyak's questionnaire responses reasonable. Dr. Rulyak's first encounter with plaintiff was on January 19, 2011, when she was referred to him by another gastroenterologist, Dr. Kimmey, for consultation. Dr. Rulyak examined plaintiff on two other occasions, April 13 and May 18, 2011. During the exams, he met with plaintiff and reviewed her symptoms. He reviewed her lab results. He reviewed the pathology report from her most recent colonoscopy. He conducted a physical exam. He reviewed the imaging studies. He ordered new lab tests and reviewed the results. At the end of this process, Dr. Rulyak concluded plaintiff probably had ileal Crohn's disease, but it was not the cause of her severe episodic pain. (AR 597, 599.) He noted his opinion was consistent with that of Dr. Zisman at the University of Washington (AR 586), but that plaintiff was "convinced that her ongoing pain is due to Crohn's disease and becomes quite upset at the suggestion that this could be anything else." (AR 592.) Dr. Rulyak characterized plaintiff's

2 "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *McLeod v. Astrue*, 634 F.3d 516, 520 (9th Cir. 2011) (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), and citing § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."))

reactions to medication as "very unusual" and without biological explanation. He concluded there was a psychiatric overlay to plaintiff's pain, finding plaintiff disabled "for a multitude of reasons" including her gastrointestinal symptoms. (AR 599.)

The PRFC questionnaire completed by Dr. Rulyak stands in contrast to his examination notes. Dr. Rulyak did not complete the entire questionnaire, answering "don't know" or responding with question marks to many of the questions. (AR 548-52.) When asked to identify plaintiff's clinical findings and objective signs, Dr. Rulyak said only "See notes." (AR 548.) When asked to specify the degree to which plaintiff could tolerate work stress, he chose the answer "Incapable of even 'low stress' jobs", but did not complete the portion of the questionnaire that asked him to explain the reasons for his conclusion. (AR 549.) In the space at the end of the form, Dr. Rulyak indicated he was "unable to address most of the questions," stating plaintiff "does have severe IBS and also has Crohn's. I think her abdominal pain makes her unable to work and she has failed all treatment to date." (AR 552.)

It is not error for an ALJ to discount medical opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004 ) (upholding ALJ's decision to discount opinions of treating physicians which were, *inter alia*, in the form of a checklist and/or conclusory, contradicted by other evidence, and based on plaintiff's subjective complaints). The Court does not find the ALJ erred in declining to credit Dr. Rulyak's partial responses to the PRFC questionnaire. *See also Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is responsible for resolving conflicts in the medical record.") and *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (when evidence reasonably supports either confirming or

reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ).

Nor does the record show the ALJ was unaware of Dr. Rulyak's status as a specialist in gastroenterology who treated plaintiff for several months. To the contrary, this information was incorporated into the decision. Although plaintiff argues the ALJ should have considered the consistency of Dr. Rulyak's opinion with that of Dr. Kimmey (AR 580-84), it is unclear what opinions plaintiff suggests are consistent, as the opinions stated by the two doctors differ in many respects. For example, although Dr. Rulyak characterizes plaintiff's pain as "severe" without further explanation or description, Dr. Kimmey describes the location of the pain as "right lower quadrant abdominal pain" but does not characterize it as "severe." (AR 580.) Dr. Kimmey characterizes plaintiff's prognosis as "Good" (*id.*), while Dr. Rulyak characterizes it as "Fair" (AR 548). Unlike Dr. Rulyak, Dr. Kimmey does not indicate plaintiff is incapable of even low stress jobs, stating instead that plaintiff's ability to tolerate work stress is "unknown." (AR 581.) In fact, a notable similarity between the two questionnaires is that neither physician felt able to answer all of the questions.

The Court also finds no error in the other reasons given by the ALJ. The ALJ cited plaintiff's "lack of sustained treatment due to the claimant being refractory to treatment" as contradicting Dr. Rulyak's questionnaire responses indicating plaintiff was incapable of working. Indeed, Dr. Rulyak's actual examination reports bear more similarity to the ALJ's conclusion, noting plaintiff's reported reaction to the Crohn's medication had "no biological reason," and that "at this point I think we are left with symptomatic management and I did explain that I don't have much more to offer her." (AR 597, 599.) Dr. Lord's finding that plaintiff's pain was relieved by treatment for constipation was also cited by the ALJ as

undermining Dr. Rulyak's questionnaire response indicating plaintiff was disabled by her abdominal pain. (AR 885.) Plaintiff, in sum, fails to establish error in the ALJ's consideration of Dr. Rulyak's opinions.

B. Michael Kimmey, M.D.

While plaintiff argues the ALJ erred in giving "no weight to Dr. Kimmey's assessment" (Dkt. 12 at 14), she fails to specify which opinion the ALJ should have adopted. Claims that are unsupported by explanation or authority may be deemed waived. *Carmickle*, 533 F.3d at 1161 n.2 (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (noting that we "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief").)

Assuming plaintiff's challenge is to the ALJ's discounting of Dr. Kimmey's checkmark answer to the PRFC question regarding plaintiff's ability to maintain attention and concentration (AR 28, 581), the Court finds no error in the ALJ's assessment. While plaintiff argues Dr. Kimmey's reference to "erosions in terminal ileum on colonoscopy" is an objective sign (AR 580), Dr. Kimmey later commented plaintiff "may not even have Crohns" (AR 402), referring her to Dr. Rulyak for a second opinion. As summarized above, Dr. Rulyak ultimately concluded that, while plaintiff might have ileal Crohn's disease, he was "certainly not convinced" it was causing her abdominal pain. (AR 597.) The ALJ reasonably found Dr. Kimmey failed to cite any objective evidence or corroborating evidence in his own treatment notes (AR 401-12) as support for his response that plaintiff was not able to perform simple work tasks due to lack of attention and concentration. Plaintiff, therefore, fails to establish error in the ALJ's consideration of Dr. Kimmey's questionnaire responses.

C.     Darrow Thom, M.D.

Dr. Thom conducted a psychiatric examination of plaintiff on February 5, 2011. (AR 491-95.) He assessed plaintiff as "generally capable of managing funds. She shows intact ability to manipulate numbers and has adequate recent memory. She can accept instructions from others. She would have difficulty interacting with coworkers because of her level of depression and avoidance of the public." (AR 495.) Dr. Thom concluded plaintiff "cannot perform work activities on a consistent basis at this time." (*Id.*)

The ALJ gave no weight to this conclusion, finding Dr. Thom's one-time report to be inconsistent with the totality of the evidence and the results of the mental status evaluation conducted during the examination. (AR 28.) Plaintiff argues the ALJ ignored the evidence in Dr. Thom's report that corroborated disability. However, the Court notes that the ALJ did not reject Dr. Thom's findings, but only his assessment that plaintiff was unable to work. In fact, the ALJ cited Dr. Thom's findings elsewhere in the decision as showing plaintiff capable of greater mental functioning than she alleged. (AR 26.) In formulating the RFC, the ALJ limited plaintiff to routine work requiring one-to-three step instructions, tasks requiring concentration for two-hour periods, work in proximity to coworkers, but not in a team or cooperative effort, and occasional and superficial contact with the general public. Plaintiff does not show this RFC fails to address the specific deficits or limitations identified by Dr. Thom, and simply argues the ALJ should have adopted Dr. Thom's ultimate conclusion about her employability, a case-dispositive finding reserved to the Commissioner. SSR 96-5p. Plaintiff fails to show harmful error in the ALJ's consideration of Dr. Thom's opinions.

/ / /

D. Shannon Jones, Ph.D.

Dr. Jones, a psychologist at Harbor Behavioral Health, wrote a short letter "To Whom It May Concern," indicating plaintiff was "at times unable to care for her personal needs and ADLs without assistance." (AR 500.) Dr. Jones wrote that plaintiff demonstrated "significant impairment in her ability to perform simple work-related activities with adequate pace and perseverance and could not perform simple and repetitive tasks without additional supervision or special accommodations for mental health conditions." (*Id*.) Dr. Jones stated plaintiff was severely impaired "in her ability to interact appropriately with others and is not appropriate for work at this time." (*Id*.) The ALJ gave no weight to this letter because it lacked any reference to any supporting objective evidence, was not corroborated by Dr. Jones' treatment notes, and was inconsistent with the totality of the evidence showing general improvement, mild clinical findings, and activities performed by plaintiff demonstrating greater mental functioning ability than indicated by Dr. Jones. (AR 29.)

Plaintiff does not specifically challenge the reasons given by the ALJ for giving no weight to Dr. Jones' opinions.[3] She, instead, argues the ALJ had the duty to recontact Dr. Jones because of the abbreviated nature of her treatment notes.

Plaintiff misconstrues the ALJ's reasoning. The ALJ's finding was directed to the opinions expressed in Dr. Jones' March 16, 2011 letter, not her treatment notes. To the contrary, the ALJ found the information in Dr. Jones' treatment notes at odds with the opinions in the letter, which the ALJ found illustrative of "general improvement." (AR 29.) (*See also*

---

3 In her reply brief, plaintiff argues the ALJ erred in finding Dr. Jones' notes suggest "overall improvement." (Dkt. 15 at 8-9.) The Court declines to consider this argument not presented in the opening brief. *See Carmickle*, 533 F.3d at 1161.

*supra* n. 3.) Furthermore, the ALJ's duty to develop the record arises only if the evidence is ambiguous or if the ALJ finds the record inadequate to allow for proper evaluation of the evidence, neither situation being presented here. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoted source omitted); *accord Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001). The Court finds no error in the ALJ's evaluation of Dr. Jones' opinions.

E. Drew Stevick M.D. and Eugene Kester, M.D.

The ALJ gave significant weight to the assessment by Dr. Kester (AR 114-39, also including assessments by Dr. Stevick) finding plaintiff able to work with others on a superficial basis. (AR 28.) The ALJ also incorporated Dr. Stevick's opinion plaintiff was capable of light work with the need for bathroom access. (AR 27.) Plaintiff argues the ALJ erred in this regard because the opinions of reviewing doctors do not constitute substantial evidence which can be used to reject other opinions.

Again, plaintiff's argument misses the mark. The ALJ found plaintiff capable of limited light duty work based on the evidence in the complete medical record, including mild clinical findings, normal labs, mild endoscopic findings, abdominal CT scan showing no evidence of any abnormalities, reactions to medication that were "very unusual" and without "biological explanation," abdominal pain that was responsive to treatment for constipation, symptoms that were "out of proportion" and "bland radiographic studies," and plaintiff's apparent motivation to keep her diagnosis of Crohn's disease despite the lack of support for her

subjective complaints. (AR 24-26.) The ALJ found plaintiff's daily functioning showed a greater mental and physical capacity than alleged. The ALJ assessed an RFC that included those limitations found credible and supported by substantial evidence in the record. Plaintiff does not demonstrate error in the ALJ's consideration of the opinion of Dr. Kester and Dr. Spivak that plaintiff was capable of light work with the need for bathroom access, and of working with others on a superficial basis.

**CONCLUSION**

For the reasons set forth above, this matter should be AFFIRMED.

DATED this 26th day of September, 2013.

Mary Alice Theiler
Chief United States Magistrate Judge